**COMMONWEALTH Of Pennsylvania,**
**Appellant**

v.

**Jerrell WHITLOCK, Appellee.**

Superior Court of Pennsylvania.

Argued Oct. 30, 2012.

Filed May 3, 2013.

Kevin F. McCarthy, Assistant District Attorney, Pittsburgh, for Commonwealth, appellant.

Brandon P. Ging, Public Defender, for appellee.

BEFORE: MUSMANNO, J., WECHT, J., and COLVILLE, J.*

OPINION BY WECHT, J.:

The Commonwealth challenges the trial court's July 15, 2011 suppression order. That order precluded the introduction into evidence of five bricks of heroin retrieved from a five-gallon bucket located on the front porch of the residence of Jerrell Whitlock ("Appellee"). We affirm.

The trial court has provided the following account of the facts and allegations underlying its suppression ruling:

> Pittsburgh Police officers, including Officer Fetty, Officer Rosato and Officer Butler were patrolling the Hazelwood area of the City of Pittsburgh [in plain clothes] in an unmarked police cruiser at approximately 5:00 p.m. on April 2, 2010. The officers observed three males, including [Appellee], whom the officers recognized from previous interactions, standing in front of a residence at 5122

---

* Retired Senior Judge assigned to the Superior Court.

Lydell Street. Officer Fetty testified that 5122 Lydell Street was located in the Hazelwood section of the City of Pittsburgh in an area which he referred to as "below the tracks." Officer Fetty also identified this area as a "primary target area" and a "high crime or high drug area." Officer Fetty believed that the three men he was observing recognized the officers' vehicle as a police car. It was undisputed that 5122 Lydell Street was [Appellee's] residence. The officers were approximately 150 feet from the three males when they first saw them. According to Officer Fetty, who was riding as the front seat passenger as the officers' vehicle approached the males, two of the males "kind of drifted away from our vehicle, kind of walking back towards Elizabeth Street where we were coming from." Officer Fetty observed [Appellee] walk onto the porch of the residence. The porch and the residence were fenced in. After [Appellee] walked onto the porch, Officer Fetty observed [Appellee] remove a large object from his pocket and drop it into a five gallon bucket sitting on the porch.

Officer Fetty suspected that the object was bundled bricks of heroin. The two other males and walked onto the porch. [sic] The officers exited their vehicles [1] and summoned [Appellee] and the others to come down off the porch. All three men complied. The officers then detained the three men. According to Officer Fetty, at this point, the officers were conducting an investigatory detention of the men. Officer Fetty then walked onto the porch and looked into the bucket. Officer Fetty indicated that he saw what he believed to be five bricks of heroin taped together in white magazine paper. Officer Fetty testified that the package was opaque and he could not see through the paper to determine what was wrapped in the paper. [Appellee] was then placed under arrest. After the arrest, it was determined that the package contained heroin. Incident to arrest, the officers seized $1,371.00 and two cell phones which were found in [Appellee's] pant pockets.

Trial Court Opinion ("T.C.O."), 1/18/2012, at 2–3 (footnote omitted).

On April 8, 2011, Appellee filed a pretrial motion to suppress the evidence obtained from the bucket located on the porch of Appellee's residence. On July 15, 2011, following a hearing at which the Commonwealth introduced only the testimony of Officer Fetty, the trial court granted Appellee's motion. This appeal followed.[2]

The Commonwealth raises the following question for our review:

> Whether the suppression court erred in concluding that the police could not search the bucket and seize the object that they saw [A]ppellee discard, when the bucket was sitting on the front porch and in plain view from the street, and the court had found that the police were in a lawful vantage point when they viewed [Appellee] discard the object into the bucket?

Brief for the Commonwealth at 4.

Our standard of review of a trial court order granting a defendant's motion to suppress evidence is well-established:

---

1. It is not entirely clear whether more than one vehicle was involved in the patrol. The question is immaterial to our review.

2. The Commonwealth may appeal an interlocutory order suppressing evidence when it provides a certification with its notice of appeal "that the order will terminate or substantially handicap the prosecution." Pa.R.A.P. 311(d); see *Commonwealth v. Malinowski*, 543 Pa. 350, 671 A.2d 674, 678 & n. 8 (1996); *Commonwealth v. Shearer*, 584 Pa. 134, 882 A.2d 462 (2005). The Commonwealth has so certified.

When the Commonwealth appeals from a suppression order, we ... consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. The suppression court's findings of fact bind an appellate court if the record supports those findings. The suppression court's conclusions of law, however, are not binding on an appellate court, whose duty is to determine if the suppression court properly applied the law to the facts.

*Commonwealth v. Boulware,* 876 A.2d 440, 442 (Pa.Super.2005) (citations and internal quotation marks omitted). We defer to the trial court's findings of fact, because it is the fact-finder's sole prerogative to pass on the credibility of the witnesses and the weight to be given to their testimony. *Commonwealth v. Baker,* 946 A.2d 691, 693 (Pa.Super.2008).

The trial court noted correctly that, as a general rule, "a search warrant is required before police may conduct any search." T.C.O. at 4 (citing *Commonwealth v. White,* 543 Pa. 45, 669 A.2d 896, 900 (1995)). Absent the application of one of a few clearly delineated exceptions, a warrantless search or seizure is presumptively unreasonable. *Id.* (citing *Horton v. California,* 496 U.S. 128, 134 n. 4, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990)). This is the law under both the Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution. *Id.* (citing *Commonwealth v. McCree,* 592 Pa. 238, 924 A.2d 621, 627 (2007)); *see Commonwealth v. Jones,* 605 Pa. 188, 988 A.2d 649, 656 (2010).

Among the enumerated exceptions to the warrant requirement is the "plain view doctrine," upon which the Commonwealth bases its argument that the search and seizure here at issue were constitutional. In this connection, the trial court properly recited the three-part "*Horton* test" as follows:

> [The plain view] doctrine permits the warrantless seizure of an object when: (1) an officer views the object from a lawful vantage point; (2) it is immediately apparent to him that the object is incriminating; and[ ] (3) the officer has a lawful right of access to the object. *Commonwealth v. Brown,* 23 A.3d 544 (Pa.Super.2011) (citing *Horton v. California,* 496 U.S. 128 [110 S.Ct. 2301, 110 L.Ed.2d 112] (1990)); *Commonwealth v. McCullum,* [529 Pa. 117] 602 A.2d 313, 320 (Pa.1992); *Commonwealth v. Graham* [554 Pa. 472] 721 A.2d 1075, 1079 (1998).

T.C.O. at 4. In determining whether the incriminating nature of an object is "immediately apparent" to a police officer, courts should evaluate the "totality of the circumstances." *Id.* (citing *Commonwealth v. Ballard,* 806 A.2d 889, 892 (Pa.Super.2002)). Although courts have recognized that a police officer can never be certain that an object in plain view is incriminating, the officer's belief must be supported by probable cause. *Id.* at 4–5 (citing *Commonwealth v. Ellis,* 541 Pa. 285, 662 A.2d 1043, 1049 (1995)).

The trial court analyzed the facts and allegations before it as follows:

> It is beyond dispute that the officers could not see what was contained inside the wrapped package. All they could determine is that [Appellee] possessed a package that was wrapped in newspaper. Although Officer Fetty testified that he suspected that the package contained heroin, the other circumstances of the officer's interaction with [Appellee] do not support this suspicion. As Officer Fetty testified, when the three males noticed the officers, they began to "drift away" or "walk" toward the police vehi-

cle.[3]  None of the men ran from the scene or engaged in any conduct exhibiting their intent to flee the scene. Instead, the men walked toward the officers. [Appellee] walked onto his porch and the two men followed behind him. Knowing the officers were watching him, [Appellee] dropped an opaque package into a bucket on the porch.[2]  There was absolutely no testimony during the suppression hearing suggesting the men were engaged in a narcotics transaction.[3]  They exhibited no furtive conduct.  This Court believes that these circumstances demonstrate that it was not immediately apparent to the officers that the men were involved in any illegal activity and, therefore, it could not be "immediately apparent" that the opaque object observed by the officers was incriminating. It was simply a package or container wrapped in magazine paper.

---

2  The Commonwealth's characterization in their first appeal issue that the police saw [Appellee] "discard" the package is misplaced.  [Appellee] dropped the package into a bucket located on the porch of his residence.  There was no evidence that the bucket was used as a trash receptacle or that the bucket contained other "discarded" material.

3  There was no exchange of items taking place among the three men; there were no other items relating to drug activity observed on or near any of the three men.

If the officers believed that the totality of circumstances were such that they could convince an issuing authority that probable cause existed such that a seizure of the package/container wrapped in magazine paper was legally justifiable, they could have easily applied for a search warrant to conduct the search

and seizure.  All three individuals were detained.  The bucket and its contents were under the complete control of the officers.  Accordingly, the Court is convinced that the warrantless search of the bucket and seizure of the package was improper.

T.C.O. at 4–6 (citations modified; emphasis in original).

The Commonwealth and Appellee debate skillfully the constitutional question presented by what expectation of privacy is reasonable regarding a porch that is not entirely barricaded from street access.[4]  The discussion presents an interesting intellectual question, as to which there is only limited decisional law in the Commonwealth of Pennsylvania.  *See Commonwealth v. Gibbs*, 981 A.2d 274 (Pa.Super.2009) (addressing the status as constitutionally protected curtilage of an empty, unenclosed "porch" consisting of a concrete slab used by deliverymen and visitors, upon which police entered to secure a home while awaiting a search warrant); *Commonwealth v. English*, 839 A.2d 1136 (Pa.Super.2003) (suppressing seizure of marijuana plants from rear porch, even though observed and identified from a lawful vantage point, due to lack of exigent circumstances).  In the context of this case, however, we find that this question does not come into play.

Had the trial court drawn a distinction between the relative precision and confidence of the officers' observations of Appellee withdrawing the object from his clothing at the distance from the curb to the porch, and the later observation of that same object lying in the bucket on

---

3.  On cross-examination, Officer Fetty clarified that, as the police car rounded the corner, Appellee moved from the street toward his porch, while the other two suspects actually walked toward the unmarked car.  Notes of Testimony, 7/15/2011, at 20–22.

4.  Officer Fetty testified vaguely that the porch was surrounded by a railing and that the yard was surrounded by a fence, Notes of Testimony, 7/15/2011, at 15–16, 23–24, 28, 33–34, but that the front gate to the property, if any, was open.  *Id.* at 34.

Appellee's porch from a position standing or stooping directly over it, such a question might have emerged. However, the trial court focused plainly upon the characteristics of the object itself in the totality of the circumstances, in effect assuming that both police observations were permissible in their own right. The trial court nonetheless found that the observed characteristics of the object in light of the surrounding circumstances failed to establish probable cause sufficient to authorize the search and seizure under the plain view exception to the warrant requirement. Accordingly, applying our standard of review, we are constrained to assess only whether the trial court erred in finding that the investigating officers' observations, and the totality of the attendant circumstances, failed to render it immediately apparent that the observed object was contraband, thus giving the officers probable cause to suspect that a crime had been or was being committed so as to warrant the search and seizure.

On this question, the Commonwealth is all but silent. It provides no citation to precedent to support the proposition that the observations, as found by the trial court and supported by the evidence, added up to probable cause. Its entire argument consists of a paragraph of highlights taken from the testimony of Officer Fetty:

> Here, the police were conducting a plain clothes suppression detail when they observed three men, including [A]ppellee, standing on the street directly in front of [A]ppellee's residence. Notes of Testimony ("N.T."), 7/15/2011, at 10, 18, 20. Officer Fetty testified that he recognized the men in front of the residence because he had arrested all three of them in separate incidents previously,

and that he had made an arrest for possession of heroin at that same address.[5] *Id.* at 10, 11. Upon recognizing the unmarked car, two of the males "drifted away from the vehicle," while [A]ppellee walked onto the front porch. *Id.* at 12, 24. As he did so, [A]ppellee took a large, white object out of his pocket and discarded it into a bucket on the front porch. *Id.* at 12–13, 16, 24, 27, 28, 31, 38. Officer Fetty testified that it was immediately apparent to him, as well as Officer Rosato, based on their experience and training, that the object was incriminating. "We both saw it and looked at each other and couldn't believe what we saw." *Id.* at 14. It was "banded together and it looked like bricks of heroin ... taped together in white magazine paper." *Id.* at 13–14, 29, 33. Officer Fetty had been a Pittsburgh police officer for five years by April 2, 2010, specifically involved in targeting narcotics and guns. *Id.* at 7. He had made approximately 600 drug and gun-related arrests prior to April 2, 2010. *Id.* at 8. Moreover, he testified that he recognized the white object was bricks of heroin because he "had multiple arrests like this, and this is common packaging." *Id.* at 14. The Commonwealth submits that the suppression court's ruling is contrary to the evidence of record, and that based upon the totality of the circumstances, it was immediately apparent to the officers that the object [A]ppellee discarded was illegal contraband.

Brief for the Commonwealth at 11–12 (citations modified).

Distilled to its essence, the Commonwealth's argument that Officer Fetty had probable cause consists of two components: Officer Fetty's experience in nar-

---

5.  That arrest involved an individual who was not involved in, or present for, the encounter here at issue.

cotics investigations, and his observation of Appellee depositing five opaque objects, wrapped in newspaper or magazine paper and taped together, into a bucket on Appellee's porch. The Commonwealth does not acknowledge or dispute the trial court's observations that the suspects, including Appellee, did not engage in any behavior consistent with a narcotics transaction. Neither does the Commonwealth dispute the trial court's finding that the suspects' behavior was neither furtive nor otherwise indicative of illegal activity. The suspects undisputedly made no gesture toward flight, and evidently did not resist the officers' directions or inquiries. Finally, the Commonwealth offers no legal precedent whatsoever to support the proposition that the search and seizure in this case were supported by probable cause as a matter of law.[6]

In our own research, we have found no case that is entirely on point. However, our decision in *Commonwealth v. Colon,* 777 A.2d 1097 (Pa.Super.2001), supports the trial court's ruling by negative inference. In *Colon,* officers conducted a traffic stop and arrested the appellee following their observations of a nighttime street exchange of cash for small, unidentified objects between two parties and the appellee's co-defendant. After observing the exchange, the appellee drove up and parked some distance from the co-defendant. *Id.* at 1099. The co-defendant then approached the appellee's car, the two conversed briefly, then the codefendant withdrew cash from his pocket and handed it to the appellee. The appellee then handed the co-defendant small, unidentified objects, which the co-defendant secreted in his sock. The appellee then drove away, and the observing officers radioed back-up

officers with a description of the vehicle. The back-up officers observed and stopped the vehicle shortly thereafter. *Id.*

When the appellee failed to produce motor vehicle registration or proof of insurance, the officers asked him to step out of the vehicle and place his hands on the roof of the car. The officers patted the appellee down and recovered four clear plastic packets from his pockets, each of which contained a blue glacine packet containing white powder and stamped with the word "Turbo," which the officers testified was a common stamp for heroin. The appellee then was handcuffed and placed in the police cruiser. One of the arresting officers then returned to the vehicle and examined the interior with a flashlight. On the rear passenger floor, partially concealed under the front seat, the officer observed a matchbox stamped "Turb." He also noticed newspaper inside the matchbox, which the officer testified was consistent with the packaging of heroin. The officer then opened the rear passenger door and confiscated the matchbox, wherein he found packets of heroin. *Id.* at 1099–1100.

In finding the search and seizure constitutional, we focused upon the question of whether the incriminating nature of the matchbox was reasonably apparent to the investigating officer. *Id.* at 1104. We acknowledged the officer's experience and the newspaper packaging as contributing to the totality of the circumstances. However, in deeming the seizure of the matchbox constitutional, we focused on the nexus between the glacine, powder-filled packets stamped "Turbo" found on the appellee's person and the "Turb" stamp observed on the matchbox from the officer's undisput-

---

6. Arguably, this omission by itself constitutes waiver of the Commonwealth's argument on this point. *See Commonwealth v. Brougher,* 978 A.2d 373, 375 (Pa.Super.2009); Pa.R.A.P. 2119(a) (requiring discussion and citation of pertinent authorities on peril of waiver).

edly legal vantage outside the stopped vehicle. *Id.*

Although *Colon* serves to reinforce the suggestion that heroin is sometimes wrapped in newspaper, we do not believe that *Colon* contradicts the trial court under these circumstances. As noted, the traffic stop in *Colon* followed extensive observations of suspicious interactions between the appellee and another individual. That individual had been observed moments earlier engaging in another suspicious transaction. Moreover, by the time one of the officers observed the matchbox, in addition to observing the suspicious interactions, the officers already had found narcotics in clear packaging on the appellee's person that were stamped "Turbo," very similarly to the "Turb" stamp observed on the matchbox. The testimony in the instant case provided no such combination of incriminating factors; to the contrary, as noted *supra,* the Commonwealth's assertions in support of probable cause consist of no more than Officer Fetty's testimony that he was an experienced narcotics investigator and that he observed Appellee withdrawing a newspaper-wrapped package from his pocket and depositing it in a bucket on his own porch, which triggered his suspicion that the package contained heroin.

Officer Fetty's experience in narcotics investigations is insufficient to compensate for the paucity of incriminating observations in this case. In recent years, our Supreme Court and this Court have issued a series of cases addressing the degree to which an officer's experience can inform a court's inquiry into the presence of probable cause. *See, e.g., Commonwealth v. Thompson,* 604 Pa. 198, 985 A.2d 928 (2009); *Commonwealth v. Dunlap,* 596 Pa. 147, 941 A.2d 671 (2007). While *Thompson* expressed certain doubts about the view espoused in *Dunlap* regarding the degree to which a police officer's experience can contribute to establishing the presence of probable cause, *Thompson* left undisturbed one fundamental proposition: "[A] court cannot simply conclude that probable cause existed based upon nothing more than the number of years an officer has spent on the force. Rather, the officer must demonstrate a nexus between his experience and the search, arrest, or seizure of evidence." *Thompson,* 985 A.2d at 935 (quoting *Dunlap,* 941 A.2d at 676).[7]

Here, to be sure, Officer Fetty invoked more than his experience. He cited his observation of five opaque objects wrapped in paper and taped together, which, he indicated, resembled packaging he had observed in the past used to package heroin. However, he offered nothing beyond those observations to establish probable cause. In particular, Officer Fetty did not assert that anything about the suspects' behavior,

---

7. Notably, *Dunlap* and *Thompson* both involved police observations of street exchanges of currency for unidentified objects. In the instant case, no such transaction was observed. However, even when such a transaction is observed, our Supreme Court has heretofore left intact the multi-factorial analysis it espoused in *Commonwealth v. Lawson,* 454 Pa. 23, 309 A.2d 391 (1973). Under that analysis, "[t]he time is important; the street location is important; the use of a street for commercial transactions is important; the number of such transactions is important; the place where the small items were kept by one of the sellers is important; [and] the movements and manners of the parties are important." *Id.* at 394. Here, while the events at issue occurred in an area identified by the police as "a primary target area," and a "high crime or high drug area," N.T. at 8, 10, the observations were taken during the day, no transaction of any kind was seen, the item was kept in Appellee's hip pocket, and the suspects made no effort to flee or furtive movements other than Appellee's placement of the unidentified object in a receptacle on his own porch.

other than Appellee's placement of the above-described, opaque object in a bucket on Appellee's own porch, led him to believe that criminal activity was afoot.

As noted *supra,* our standard of review requires us first to determine whether the trial court's findings of fact are supported by the record. Plainly, they are, and the Commonwealth does not argue otherwise. This leaves us only to determine whether the trial court erred in its application of the law to the facts as found by that court. We find that the trial court did not err as a matter of law in determining that the Commonwealth failed to establish that the incriminating nature of the object was immediately apparent under the totality of the circumstances.

Order affirmed. Jurisdiction relinquished.