J-S66037-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| FRANCESCO GAMBINO, | : | |
| | : | |
| Appellee | : | No. 698 MDA 2014 |

Appeal from the Order entered on March 27, 2014
in the Court of Common Pleas of Lancaster County,
Criminal Division, No. CP-36-CR-0005044-2012

BEFORE: BENDER, P.J.E., SHOGAN and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:                **FILED NOVEMBER 21, 2014**

The Commonwealth of Pennsylvania appeals from the Order granting Francesco Gambino's ("Gambino") Motion to Suppress.[1]  We reverse and remand for further proceedings.

In the early morning hours of July 22, 2012, at approximately 3:00 a.m., Officer Andrew Dobish ("Officer Dobish") of the Manheim Police Department was parked near the intersection of Lititz Pike and Keller Avenue in Lancaster, Pennsylvania.  Officer Dobish observed a dark convertible vehicle, operated by Gambino, approach the intersection and then slow and stop appropriately for a red light.  N.T., 3/27/14, at 36.  Gambino's vehicle

---

[1] The Commonwealth has certified that the ruling substantially handicaps its prosecution.  **See Commonwealth v. Johnson**, 86 A.3d 182, 185 (Pa. 2014) (stating that in criminal cases, the Commonwealth, pursuant to Pa.R.A.P. 311(d), may take an appeal as of right from an order that does not end the entire case where the Commonwealth certifies that the order will terminate or substantially handicap its prosecution of the case).

was in the designated left turn lane and, other than Officer Dobish's police car, no other vehicles were in the intersection or in the area. *Id*. at 37. When the light turned green, Gambino's vehicle turned left from Keller Avenue onto Lititz Pike in an appropriate fashion, and then accelerated quickly on Lititz Pike without loss of control or squealing of tires. *Id*. at 38. Officer Dobish testified that Gambino had failed to use his left turn signal, but conceded that there were no other vehicles for Gambino to signal to, and that it is not uncommon for people to make that left turn and fail to use their turn signals. *Id*. Additionally, Officer Dobish testified that he observes drivers failing to signal when making a left turn at that intersection almost every day, and that he does not pull over everybody who fails to signal. *Id*. at 38-39.

Nevertheless, Officer Dobish followed Gambino's vehicle as it proceeded down Lititz Pike, whereupon it moved from the right lane to a newly created right lane without signaling, and thereafter made a right turn at the intersection of Oregon Pike without any unusual driving. *Id*. at 12, 41-42. Officer Dobish noticed no unusual driving as Gambino proceeded on Oregon Pike and then slowed and stopped at a red light at the intersection with Butler Avenue. *Id*. at 43. After the light turned green, Gambino continued on Oregon Pike before turning right onto State Route 30. *Id*. at 45-46. Officer Dobish testified that he was "probably" going 95 miles per hour to keep up with Gambino's vehicle on Oregon Pike before turning right

onto Route 30. *Id*. at 46. While following Gambino's vehicle on Route 30, Officer Dobish used a VASCAR Plus speed tacking device to clock Gambino's speed at 78.4 miles per hour. *Id*. at 19-21. Thereafter, in a location slightly outside of his primary jurisdiction, Officer Dobish stopped Gambino's vehicle. *Id*. at 22.

As he approached Gambino's vehicle, Officer Dobish observed that Gambino had watery and bloodshot eyes, and detected an odor of alcohol coming from Gambino. *Id*. at 24. Officer Dobish testified that Gambino admitted that he had a couple of drinks earlier in the evening. *Id*. at 25. Officer Dobish administered a field sobriety test, which Gambino failed. *Id*. at 26-29. Thereafter, Officer Dobish arrested Gambino, and he was charged with driving under the influence ("DUI")[2] and speeding.[3] *Id* at 29.

Gambino filed a Motion to Suppress, contending that the vehicle stop was made without probable cause or a reasonable suspicion that Gambino was either engaged in criminal conduct or had violated the Vehicle Code. Motion to Suppress, 2/28/13, at ¶ 3. Following a suppression hearing, the suppression court granted Gambino's Motion to Suppress, stating as follows:

> Well it is my assessment that I believe that Officer Dobish's intent when he left the Sunoco parking lot was to investigate [Gambino] for drunk driving.
>
> I honestly don't see how there's any plausible explanation beyond that. I've heard testimony about these failure to signal

---

[2] *See* 75 Pa.C.S.A. § 3802(a)(1).

[3] *See* 75 Pa.C.S.A. § 3362(a)(2).

indications. However, [] [O]fficer [Dobish] himself has indicated that he has rarely cited anyone for such violations.

So that[,] coupled with the fact that he was travelling, by his admission, 95 miles per hour up Oregon Pike [] when [Gambino], at least my recollection of the testimony is that there is no indication of excessive speed in that area. [] Officer [Dobish] testified that [Gambino] stopped at a red light at Butler Avenue before he ever got on Route 30.

In my opinion, the lane signaling and the speeding are nothing more that pretexts for what [Officer Dobish] intended to do all along[,] which is to pull this vehicle over for suspicion of drunk driving.

That has to be based on reasonable suspicion. I do not believe that [] Officer [Dobish] had a reasonable suspicion at the time the vehicle was pulled over to suspect that, and I am therefore granting [Gambino's] [M]otion to [S]uppress for that reason.

N.T., 3/27/14, at 87-88; **see also** Suppression Court Opinion, 6/23/14, at 4 (wherein the suppression court stated that "[i]t is sensible to conclude that at 3:00 [a.m.], with no traffic in the immediate vicinity, a reasonable police officer would not have pursued [Gambino's] vehicle for such a minor traffic violation in the absence of an invalid purpose.").

The Commonwealth filed a timely Notice of Appeal and a court-ordered Statement of Matters Complained of on Appeal pursuant to Pa.R.A.P. 1925(b).

On appeal, the Commonwealth raises the following issue for our review: "[w]hether the suppression court erred in granting [Gambino's] Motion to Suppress where the officer possessed the requisite probable cause to stop [Gambino's] vehicle for a violation of the Pennsylvania Motor Vehicle

Code[, 75 Pa.C.S.A. § 101, *et seq*. ("Vehicle Code")]?" Commonwealth Brief

at 4 (capitalization omitted).

> When the Commonwealth appeals from a suppression order, we . . . consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. The suppression court's findings of fact bind an appellate court if the record supports those findings. The suppression court's conclusions of law, however, are not binding on an appellate court, whose duty is to determine if the suppression court properly applied the law to the facts.

***Commonwealth v. Whitlock****,* 69 A.3d 635, 637 (Pa. Super. 2013) (citation

omitted).

The Commonwealth contends that the suppression court erroneously

applied a reasonable suspicion standard in determining whether Officer

Dobish possessed the quantum of suspicion required to validate the stop of

Gambino's vehicle. Commonwealth Brief at 10. The Commonwealth further

contends that regardless of whether Officer Dobish possessed reasonable

suspicion of DUI, he possessed probable cause to stop Gambino for violating

sections 3334 (relating to turning movements and required signals)[4] and 3362 (relating to speed limits)[5] of the Vehicle Code. ***Id***. The Commonwealth points to Officer Dobish's testimony that that he observed

---

[4] Section 3334 provides, in relevant part, as follows:

**Turning movements and required signals**.

(a)  *General rule.*  --Upon a roadway no person shall turn a vehicle or move from one traffic lane to another or enter the traffic stream from a parked position unless and until the movement can be made with reasonable safety nor without giving an appropriate signal in the manner provided in this section.

\* \* \*

75 Pa.C.S.A. § 3334(a).

[5] Section 3362 provides, in relevant part, as follows:

**Maximum speed limits**.

(a)  *General rule.*  --Except when a special hazard exists that requires lower speed for compliance with section 3361 (relating to driving vehicle at safe speed), the limits specified in this section or established under this subchapter shall be maximum lawful speeds and no person shall drive a vehicle at a speed in excess of the following maximum limits:

\* \* \*

(2) 55 miles per hour in other locations.

(3) Any other maximum speed limit established under this subchapter.

\* \* \*

75 Pa.C.S.A. § 3362(a)(2), (3).

Gambino failing to signal while making a left turn and speeding at approximately 78 miles per hour in a posted 55 mile per hour zone (using an approved VASCAR Plus speed-timing device), and asserts that further investigation would not help to establish these violations. *Id*. at 11, 13-14. The Commonwealth contends that the suppression court erred by ruling that Officer Dobish used the Vehicle Code violations as a "pretext" for stopping Gambino for DUI, and by analyzing the stop under a "reasonable suspicion" standard. *Id*. at 15-16. The Commonwealth argues that, by applying a "reasonable suspicion" standard, the suppression court ignored evidence that Officer Dobish had probable cause to stop Gambino due to his failure to signal and speeding violations. *Id*. at 16. The Commonwealth contends that, because Gambino violated the Vehicle Code in Officer Dobish's presence, Officer Dobish was permitted to execute a traffic stop of Gambino's vehicle, regardless of the nature of his investigation. *Id*. at 18.[6]

Any violation of the Vehicle Code legitimizes a stop, even if the stop is merely a pretext for an investigation of some other crime. ***Whren v. U.S.***,

---

[6] The Commonwealth further contends that, because Officer Dobish obtained probable cause to stop Gambino within his primary jurisdiction, he was authorized to stop Gambino outside of his jurisdiction pursuant to 42 Pa.C.S.A. § 8953(a)(2) of the Municipal Police Jurisdiction Act. Commonwealth Brief at 14. The Commonwealth also claims that Gambino waived any claim regarding the absence of an agreement between the Manheim Police Department and the Pennsylvania State Police, pursuant to 75 Pa.C.S.A. § 6109(a)(11), permitting Manheim officers to enforce the speed limit on Route 30, because he failed to raise this issue as an affirmative defense. Commonwealth Brief at 15. Because neither of these arguments formed the basis for the suppression court's decision, we need not address them on appeal.

517 U.S. 806, 812-13 (1996); *see also Arkansas v. Sullivan*, 532 U.S. 769, 772 (2001) (holding that a traffic violation arrest will not be rendered invalid by the fact that it was a mere pretext for a narcotics search); *U.S. v. Robinson*, 414 U.S. 218, 221 n.1 (1973). This is true even if, as in the instant case, the Vehicle Code violation witnessed is a minor offense. *See Commonwealth v. Chase*, 960 A.2d 108, 113 (Pa. 2008) (stating that "[t]he Fourth Amendment does not prevent police from stopping and questioning motorists when they witness or suspect a violation of traffic laws, even if it is a minor offense."). Moreover, the *Whren* Court explained that the "[s]ubjective intentions [of the officer] play no role in ordinary, probable-cause Fourth Amendment analysis." *Whren*, 517 U.S. at 813; *see also Chase*, 960 A.2d at 120 (stating that, "[i]f police can articulate a reasonable suspicion of a Vehicle Code violation, a constitutional inquiry into the officer's motive for stopping the vehicle is unnecessary.").

Here, although the suppression court challenged the pretextual nature of the stop, it accepted the uncontradicted evidence that Gambino had violated section 3334(a) of the Vehicle Code by changing lanes of travel without using his vehicle's turn signal. *See* Suppression Court Opinion, 6/23/14, at

- 8 -

2-3.[7]

We conclude that the stop of Gambino's vehicle was lawful. Accordingly, the suppression court improperly granted Gambino's Motion to Suppress.

Order reversed case remanded for further proceedings; Superior Court jurisdiction relinquished.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/21/2014

---

[7] The suppression court found Officer Dobish's testimony that he had to travel 95 miles per hour to catch up with Gambino's vehicle to be incredible. **See** Trial Court Opinion, 6/23/14, at 2-3.  The trial court did not address or discuss Officer Dobish's testimony regarding his use of the VASCAR Plus speed timing device to clock Gambino speeding at 78.4 miles per hour, in violation of section 3362(a) of the Vehicle Code.