J-S15044-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| BLAINE MATTHEW WARFIELD | |
| Appellee | No. 1075 MDA 2014 |

Appeal from the Order Entered June 24, 2014
In the Court of Common Pleas of Clinton County
Criminal Division at No(s): CP-18-CR-0000129-2014

BEFORE: LAZARUS, J., WECHT, J., and JENKINS, J.

MEMORANDUM BY JENKINS, J.: **FILED APRIL 07, 2015**

The Commonwealth appeals from the trial court's order granting Blaine Warfield's motion to suppress. We conclude that there were valid grounds to stop Warfield for an investigative detention to determine whether Warfield furnished liquor to minors. Accordingly, we reverse and remand for further proceedings consistent with this memorandum.

Warfield was charged with furnishing liquor to minors[1] based on a series of events in and around Lock Haven, Pennsylvania on October 5, 2013.[2] Warfield filed a pretrial motion to suppress alleging that liquor code

---

[1] 18 Pa.C.S. § 6310.1.

[2] Warfield also was charged with unlawful acts relating to liquor beverages ("unlawful acts") under 47 P.S. § 4-493. Following a preliminary hearing, a magisterial district justice dismissed the unlawful acts charge. The case proceeded to the trial court on the furnishing liquor charge alone.

enforcement officers stopped him and his companions in violation of his constitutional rights. The trial court held a suppression hearing in which three liquor code enforcement officers testified for the Commonwealth. There were no defense witnesses. On June 24, 2014, the trial court entered an order and opinion granting Warfield's motion to suppress. The Commonwealth timely filed a notice of appeal[3] and a Pa.R.A.P. 1925(b) statement of matters complained of on appeal. The trial court filed a Pa.R.A.P. 1925(a) opinion incorporating its June 24, 2014 opinion by reference.

The Commonwealth raises two issues in this appeal:

1. Did the trial court err in finding that the interaction between the officer and the defendant was an investigative detention?

2. Did the trial court err in finding that any investigative detention was not supported by reasonable suspicion?

Brief For Appellant, p. 4.

When the Commonwealth appeals from a suppression order, our scope of review consists of the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the

---

[3] The Commonwealth may appeal an interlocutory order suppressing evidence when it certifies in its notice of appeal that the order terminates or substantially handicaps the prosecution. Pa.R.A.P. 311(d); ***Commonwealth v. Whitlock***, 69 A.3d 635, 636 n. 2 (Pa.Super.2013). The Commonwealth provided the required certification in its notice of appeal.

record as a whole, remains uncontradicted. ***Whitlock***, ***supra***, 69 A.3d at 637. We defer to the suppression court's findings of fact that are supported by the record because, as the finder of fact, the suppression court has the prerogative to decide the credibility of the witnesses and the weight of their testimony. ***Commonwealth v. Lyles***, 97 A.3d 298, 302 (Pa.2014)*.* We are not bound by the suppression court's conclusions of law, and we must determine if the suppression court properly applied the law to the facts. ***Whitlock, supra,*** 69 A.3d at 637.

The relevant facts of this case, derived from the certified record in accordance with the above scope and standards of review, are as follows. On October 5, 2013, Officer Harbach and other liquor code enforcement officers followed Warfield's car to four establishments in or near Lock Haven. N.T., 6/18/14, pp. 11-14 (suppression hearing). Warfield was driving, and two young males accompanied Warfield. ***Id***. Officer Harbach followed Warfield in one vehicle, and two other officers followed in a second vehicle. ***Id***. at 11. At the first stop, a state liquor store, Warfield walked into the store alone and purchased items that he carried back to the car in plastic bags. ***Id***. at 31-33. At the second stop, Puff's Six Pack, an establishment that sells alcoholic beverages, Warfield walked inside alone and purchased one 6-pack of bottles. ***Id***. at 15. He returned to his car and dropped off the 6-pack, and then he walked back into the store alone and purchased one 12-pack of cans. ***Id***. The fact that Warfield made two separate purchases

indicated that he purchased alcoholic beverages, because Pennsylvania law prohibits restaurant licensees such as Puff's from selling more than two 6-packs in one sale. *Id*. at 16.

At the third stop, one of the two young males purchased what appeared to be soda. N.T., 6/18/14, pp. 33-34. At the final stop, Eagle Distributors, Warfield walked inside alone and purchased one 30-pack of Busch Beer. *Id*. at 34-35.

Based on Warfield's string of purchases, Officer Harbach suspected that the two males with Warfield were minors. N.T., 6/18/14, p. 15. She testified that "[it] is a red flag … when somebody is making all the purchases [alone and] there [are other] occupants, [because] if [the other occupants] were 21 [they] could have made it all in one single sale … they all could have carried [alcoholic beverages] out." *Id*.

Following the final purchase at Eagle Distributors, the officers followed Warfield's car to his residence on North Fairview Street. N.T., 6/18/14, pp. 14, 43. Officer Harbach parked her car two car lengths behind Warfield's car. *Id*. at 14-15. When Warfield and the two males exited Warfield's car, Officer Harbach observed that "all occupants were in possession of alcoholic beverages, and they were walking up towards me because I was actually standing directly in front of their residence." *Id*. at 14. Upon viewing all three males in possession of alcoholic beverages, Officer Harbach identified herself as a liquor code enforcement officer and instructed the males to

"drop the alcohol."[4] *Id*. at 17. Officer Harbach also directed the males to produce identification and sit down on the ground. *Id*. at 17, 26. Warfield's identification showed that he was 21 years old; the other two individuals were under age 21. *Id*. at 18.

The Commonwealth argued in the trial court that the events in front of Warfield's residence were a "mere encounter" which did not require the liquor code enforcement officers to harbor any suspicion of criminal wrongdoing. Warfield countered that the events constituted an investigative detention for which the officers needed (but lacked) reasonable suspicion of criminal activity. The trial court concluded that the incident was an investigative detention, and that the officers lacked reasonable suspicion of criminal activity.

In this Court, the Commonwealth raises two arguments: (1) the incident with Warfield was a "mere encounter," and (2) even if it was an investigative detention, Officer Harbach had reasonable suspicion to conduct an investigative stop. We conclude that the incident was a valid investigative detention supported by reasonable suspicion that Warfield illegally furnished liquor to minors.

---

[4] The other two officers arrived at the scene after Officer Harbach intercepted the males and initiated their detention. The trial court correctly focused on Officer Harbach as the crucial state actor in this case.

The Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution protect individuals against unreasonable searches and seizures. *Commonwealth v. Miller*, 56 A.3d 424, 429 (Pa.Super.2012). A seizure is a restraint on personal liberty under circumstances in which a reasonable person would not feel free to leave. *Lyles*, 97 A.3d at 303. Factors which determine whether police have effectuated a seizure include, but are not limited to: (1) the presence or absence of police excesses; (2) whether there was physical contact; (3) whether police directed the citizen's movements; (4) police demeanor and manner of expression; (5) the location of the interdiction; (6) the content of the questions and statements; (7) the existence and character of the initial investigative detention, including its degree of coerciveness; (8) the degree of seamlessness between the original encounter and subsequent developments; (9) whether the officer has told the citizen that he is free to depart; and (10) whether the officer has told the citizen that he is not required to consent to the search. *Commonwealth v. Strickler*, 757 A.2d 884, 888-89 (Pa.2000).

There are three categories of interactions between citizens and police. In evaluating the level of interaction, courts conduct an objective examination of the totality of surrounding circumstances. *Lyles*, 97 A.3d at 302. The first interaction, a "mere encounter", does not carry any official compulsion to stop or respond and therefore does not require the police

officer to have any level of suspicion. ***Id***. A mere encounter is not a seizure, because a reasonable person would feel free to leave or terminate the encounter. ***Id***. at 302-03. The second interaction, an "investigative detention", is a seizure which subjects an individual to a stop and temporary detention but is not so coercive as to constitute the functional equivalent of an arrest. ***Strickler***, 757 A.2d at 889. An investigative detention is permissible if the police officer has a reasonable and articulable suspicion that the person seized is engaged in criminal activity, and the detention may continue only so long as is necessary to confirm or dispel such suspicion. ***Id***.

The third interaction, an arrest or custodial detention, the most restrictive encounter, is a seizure that must be supported by probable cause. ***Strickler***, 757 A.2d at 889. Probable cause exists

> when the facts and circumstances which are within the knowledge of the officer at the time of the arrest, and of which he has reasonably trustworthy information, are sufficient to warrant a man of reasonable caution in the belief that the suspect has committed or is committing a crime. The question we ask is not whether the officer's belief was correct or more likely true than false. Rather, we require only a *probability,* and not a *prima facie* showing, of criminal activity. In determining whether probable cause exists, we apply a totality of the circumstances test.

***Commonwealth v. Martin***, 101 A.3d 706, 721 (Pa.2014) (italics in original).

The incident in this case exceeds the bounds of a mere encounter, because Officer Harbach exerted "official compulsion to stop or respond" by directing Warfield and the two minors to "drop the alcohol", sit on the ground and produce identification. *Lyles*, 97 A.3d at 302. A reasonable person would not have felt free to leave or to terminate this encounter. *Compare Lyles* at 304-06 (interaction did not escalate beyond mere encounter when officers approached defendant and another man in front of abandoned building in area where numerous burglaries had recently occurred, asked what they were doing there, and requested identification; officer's jotting down of identification information, as opposed to attempting to memorize it, did not restrain defendant's freedom of movement; officer's request was not accompanied by physical restraint, manifestation of authority, or mandate to comply; and officer did not tell defendant that he was not free to leave, or brandish a weapon).

This incident falls within the scope of an investigative detention, which Officer Harbach had the right to make if she had reasonable suspicion that criminal activity was afoot. *Strickler*, 757 A.2d at 889. In the course of an investigatory stop, an officer may frisk the individual's outer garments if he has reasonable suspicion that the suspect is armed and dangerous. *Commonwealth v. Clemens*, 66 A.3d 373, 381 (Pa.Super.2013). The officer also can take other reasonable measures designed to protect himself during an investigatory detention. *See, e.g., Commonwealth v. Revere*,

- 8 -

888 A.2d 694, 707 (Pa.2005) ("there are certain exigencies—and particularly, the need for safety or security in conducting and completing an investigatory detention — the existence of which would make it reasonable under the authority of **Terry [v. Ohio**, 392 U.S. 1 (1968)] **…** to place a suspect in a vehicle and transport him a short distance during an investigatory detention"); **see also United States v. Ramires**, 307 F.3d 713, 716 (8th Cir.2002) (based on reasonable suspicion of drug manufacturing, officers authorized to order defendants out of crawl space at gunpoint and handcuff them, because drug trafficking is often accompanied by dangerous weapons). On the other hand, "if the protective search goes beyond what is necessary to determine if the suspect is armed, it is no longer valid under **Terry** … " **Minnesota v. Dickerson**, 508 U.S. 366, 373 (1993).

Officer Harbach reasonably suspected that Warfield was furnishing liquor to minors based on several factors: (1) the youthful appearance of the two passengers in Warfield's car, (2) Warfield's solo purchases of alcohol (or what Officer Harbach reasonably believed was alcohol) at three establishments while the two young males waited in Warfield's car, and (3) Officer Harbach's observation, from a lawful vantage point, of Warfield *and* the two young males carrying alcohol in plain view outside of Warfield's residence. Therefore, Officer Harbach had the authority to stop Warfield and the other two males for an investigative detention. *See Commonwealth v.*

*Hayes*, 898 A.2d 1089, 1093-94 (Pa.Super.2006) (officer had articulable and adequate suspicion that defendant was furnishing alcohol to minors so as to support investigative detention in which officer stopped vehicle as it backed out of parking space; officer saw vehicle in front of liquor store and saw driver pass something to defendant which he thought was money, officer formed suspicion that driver was probably underage based on experience as 10-year veteran of police department's division for investigating furnishing alcohol to minors, defendant began walking towards liquor store, but turned back before she went inside and yelled to others in vehicle, "apple, apple," and then "oh watermelon," and defendant purchased two bottles of what officer believed was alcohol based on appearance and place of purchase).[5]

Officer Harbach's command to "drop the alcohol" was a reasonable measure to protect herself during the investigative detention. ***Revere, supra***. At the time of the stop, Warfield or his companions conceivably could have attacked Officer Harbach with the bottles of alcohol in their hands. The command to drop the alcohol was a reasonable measure to prevent Warfield or his friends from using the bottles as weapons.

_____

[5] Notably, ***Hayes*** also comments: "It is *per se* reasonable for one to assume that when a person goes into a liquor store in Pennsylvania and emerges with bottles, that person has purchased alcohol." ***Id***. at 1094.

Officer Harbach had the authority to examine Warfield's license and the other males' licenses during the investigatory detention. **Commonwealth v. Bennett**, 827 A.2d 469, 478 (Pa.Super.2003) (deputy was authorized to stop defendant and request identification based on reasonable suspicion that defendant was engaging in underage drinking). Upon determining from the licenses that Warfield was 21 and the two other males were underage, Officer Harbach had probable cause to believe that Warfield was furnishing liquor to minors in violation of 18 Pa.C.S. § 6310.1.

For these reasons, we conclude that the trial court erred by granting Warfield's motion to suppress the evidence obtained as part of the investigatory detention outside of Warfield's residence.

Order reversed. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/7/2015

- 11 -