J-S39035-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA,   :    IN THE SUPERIOR COURT OF
                                 :           PENNSYLVANIA
         Appellee              :
                                   :
         v.                  :
                                     :
MICHAEL WHITEHEAD,             :
                                   :
        Appellant           :        No. 2635 EDA 2014

Appeal from the Judgment of Sentence entered on June 19, 2014
in the Court of Common Pleas of Philadelphia County,
Criminal Division, No. CP-51-CR-0005247-2012

BEFORE: BOWES, OTT and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:          **FILED JULY 17, 2015**

Michael Whitehead ("Whitehead") appeals from the judgment of sentence imposed after he was convicted of possession of a controlled substance, and three violations of the Uniform Firearms Act (collectively, "the VUFA offenses").[1] We affirm.

The trial court set forth the relevant facts underlying this appeal as follows:

> On March 7, 2012, at 1:20 pm, Philadelphia Police Officer Daniel McMonagle ["Officer McMonagle"] was on routine patrol in a marked patrol car when he observed [Whitehead] operating a 2002 silver Chevy Impala on Upsal Street[,] and approaching the intersection of Belfield Street. The traffic light at the intersection was a "steady red" when [Whitehead] made a right turn onto Belfield Street without stopping or using a right turn signal. Officer McMonagle stopped [Whitehead's] vehicle because [Whitehead] committed a motor vehicle violation.

---

[1] **See** 35 P.S. § 780-113(a)(16); 18 Pa.C.S.A. §§ 6105(a)(1), 6106(a)(1), 6108.

As Officer McMonagle approached the driver's side of the vehicle, he observed [Whitehead] reaching across the vehicle[,] as well as leaning forward and reaching toward his sides. According to Officer McMonagle, [Whitehead] was "reaching around quite a bit" and was "reaching forward, down, and to his side all the way across the vehicle." Officer McMonagle described [Whitehead's] reaching movements as being "more than just going to the glove box to get paperwork." Based upon the observed movements, Officer McMonagle "thought that [Whitehead] was possibly trying to conceal a weapon."

Officer McMonagle ordered [Whitehead] to stop reaching and to provide his driver's license, registration, and proof of insurance. In response, [Whitehead] stuttered and was fumbling with paperwork. He produced a photocopy of a driver's license with the name Percey Whitehead[,] and the photo [was] blacked out. [Whitehead] stated that he was the owner of the vehicle and that he was driving home. [Whitehead] appeared to be nervous and "slightly standoffish."

During his interaction with [Whitehead], Officer McMonagle stood behind the door jam[b] of the vehicle and leaned forward toward the vehicle. He specifically testified that the door to the vehicle was closed and he "wasn't in the vehicle." From that viewpoint, he observed a clear, small Ziploc baggy – that he immediately recognized as narcotics packaging – on the floor mat at [Whitehead's] feet. Based upon his observation of the narcotics packaging, Officer McMonagle removed [Whitehead] from his car and frisked him for weapons. [Officer McMonagle's] partner detained [Whitehead] at the back of vehicle; [Whitehead] was not handcuffed at this time.

Officer McMonagle went to the driver's side of the vehicle to retrieve the narcotics packaging. As he was recovering the narcotics packaging, he observed that the plastic portion of the gear shifter was popped up and was cockeyed, or sitting off [] center by a quarter to one[-]half of an inch. He thought that the dislodged gear shifter was unusual so he used his flashlight to look into the gear shifter. When he did so, he immediately recognized – based upon his familiarity with firearms – that there was a firearm inside the gear shifter from his observation of the top of the barrel or the slide of the firearm. He did not touch or otherwise manipulate the gear shifter in order to make his observations. Officer McMonagle did not recover the firearm, but rather requested a search warrant for the vehicle. The

narcotics packaging and firearm were both recovered and placed on property receipts; the firearm was recovered pursuant to a search warrant obtained by Detective Linda Hughes.

Officer McMonagle regards the area where [Whitehead] was stopped as an "extremely high[-]crime area known for a lot of shootings." In his career as a police officer, Officer McMonagle has made more than 100 arrests for illegal narcotics. He is familiar with the type of narcotics packaging that he observed in [Whitehead's] vehicle. He also has extensive familiarity with firearms.

During cross-examination, [Whitehead's] counsel repeatedly asked Officer McMonagle whether he "leaned in the vehicle" or "lean[ed] into the vehicle." [Whitehead's] counsel also showed the officer an arrest memo, which states that, "Police leaned into the vehicle to get a better view." In response, Officer McMonagle testified that he "leaned forward up to the vehicle," "leaned forward to the driver," and "was not in the vehicle" prior to observing the narcotics packaging. He further testified that he could see the narcotics packaging from where he was standing and without leaning into the car. Officer McMonagle testified that his partner[,] Officer Berryman[,] prepared the arrest memo based, in part, on information received from Officer McMonagle, but that it was not a verbatim account of his statements to Officer Berryman.

Trial Court Opinion, 12/12/14, at 1-3 (citations to record omitted).

Following Whitehead's arrest, the Commonwealth charged him with possession of a controlled substance and the VUFA offenses. Whitehead subsequently filed a Motion to suppress the evidence seized from his vehicle, asserting, *inter alia*, that Officer McMonagle's warrantless search of the vehicle was constitutionally infirm because it did not meet the "plain view" exception to the warrant requirement. After conducting a suppression hearing on December 7, 2012, and considering the parties' Memoranda of Law, the suppression court denied Whitehead's Motion to suppress.

- 3 -

The matter eventually proceeded to a non-jury trial, before a different trial court judge, at the close of which the trial court found Whitehead guilty of the above-mentioned crimes. On June 19, 2014, the trial court sentenced Whitehead to an aggregate prison term of four to eight years.

Whitehead timely filed a post-sentence Motion, challenging, *inter alia*, the denial of his Motion to suppress. After a hearing on August 15, 2014, the trial court denied the post-sentence Motion. Whitehead filed a timely Notice of Appeal. In response, the trial court ordered him to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Whitehead timely filed a Concise Statement.

On appeal, Whitehead raises the following issues for our review:

1. Is a Philadelphia police officer in an unlawful vantage point to view an item he claims is in plain view[,] when he places his shoulder "in on a door jam[b]" of a car that has its window down[, and d]id the suppression court abuse its discretion by denying [Whitehead's] Motion to suppress [on this basis]?

2. Is a small[,] clear Ziploc baggy, consistent with narcotics packaging, not immediately apparent to be contraband[, and d]id the suppression court abuse its discretion by denying [Whitehead's] Motion to suppress [on this basis]?

Brief for Appellant at 6 (capitalization omitted).[2]

In reviewing the denial of a suppression motion,

our role is to determine whether the record supports the suppression court's factual findings and the legitimacy of the inferences and legal conclusions drawn from those findings. In making this determination, we may consider only the evidence of

---

[2] Whitehead admits that Officer McMonagle conducted a lawful traffic stop of his vehicle. *See* Brief for Appellant at 10.

- 4 -

the prosecution's witnesses and so much of the defense as, fairly read in the context of the record as a whole, remains uncontradicted. When the evidence supports the factual findings of the suppression court, we may reverse only if there is an error in the legal conclusions drawn from those factual findings. As a reviewing court, we are therefore not bound by the legal conclusions of the suppression court and must reverse that court's determination if the conclusions are in error or the law is misapplied.

***Commonwealth v. Page***, 59 A.3d 1118, 1131 (Pa. Super. 2013) (citation and brackets omitted).

Both of Whitehead's issues challenge the legality of Officer McMonagle's seizure of the contraband in Whitehead's vehicle under the "plain view" exception to the warrant requirement.

"A search warrant is required before police may conduct any search." ***Commonwealth v. Williams***, 2013 PA Super 172, 73 A.3d 609, 614 (Pa. Super. 2013) (citation omitted). "Absent the application of one of a few clearly delineated exceptions, a warrantless search or seizure is presumptively unreasonable." ***Id.*** One of these exceptions is the "plain view" doctrine ….

The plain view doctrine permits the warrantless search and seizure of an object when "(1) an officer views the object from a lawful vantage point; (2) it is immediately apparent to him that the object is incriminating; and (3) the officer has a lawful right of access to the object." ***Commonwealth v. Whitlock***, 2013 PA Super 105, 69 A.3d 635, 637 (Pa. Super. 2013). In determining whether the incriminating nature of an object is "immediately apparent" to a police officer, courts should evaluate the "totality of the circumstances." ***Id.*** "Although courts have recognized that a police officer can never be certain that an object in plain view is incriminating, the officer's belief must be supported by probable cause." ***Id.***

***Commonwealth v. Sodomsky***, 2015 PA Super 133 ** 19-20 (Pa. Super. 2015) (brackets omitted).

In his first issue, Whitehead argues that the evidence should have been suppressed because Officer McMonagle was not at a lawful vantage point when he viewed the alleged narcotics packaging,[3] and, therefore, the first prong of the plain view doctrine was not met. *See* Brief for Appellant at 11-13. Whitehead contends that Officer McMonagle was impermissibly leaning into Whitehead's car when he viewed the packaging. *See id.* at 12-13; *see also id.* at 13 (arguing that Officer McMonagle "did not have permission to place his shoulder 'in on' the [door] jam[b].").

Here, the trial court concluded, in its Pa.R.A.P. 1925(a) Opinion, that "the suppression court's factual findings are supported by the record, *i.e.*, that Officer McMonagle observed the narcotics packaging while standing *outside* of [Whitehead's] vehicle." Trial Court Opinion, 12/12/14, at 6 (emphasis added). We agree. The following testimony at the suppression hearing supports this conclusion:

> Q. [The prosecutor]: What, if anything, did you do next[, *i.e.*, after Whitehead had given Officer McMonagle his identification paperwork during the stop]?
>
> A. [Officer McMonagle]: As of having our exchange, he has the paperwork, I'm standing behind the door jam[b] of the vehicle leaning forward and I observed what I believe to be narcotics packaging. … As I leaned in, I was able to observe what I believed to be narcotics packaging at [Whitehead's] feet.
>
> Q. Now, you said you were leaning forward and looking in. At this point was the car door open or shut?

---

[3] We separately address below, in connection with Whitehead's second issue, his assertion that the packaging in question, *i.e.*, a small Ziploc bag, was not immediately identifiable as narcotics packaging.

- 6 -

A. The door was shut. I wasn't in the vehicle. Leaning forward.

\*\*\*

A. My shoulder was in on the door jam[b] of the vehicle.

N.T., 12/7/12, at 14-15. Later, the following exchange transpired on cross-examination:

Q. [Defense counsel]: At some point in time you leaned in [Whitehead's] vehicle, is that right?

A. [Officer McMonagle]: Yes. Like I said, I leaned forward up to the vehicle.

\* \* \*

Q. So you didn't lean into the vehicle?

A. I leaned forward to the driver.

Q. Did you lean into the vehicle? The third time.

A. I was not in the vehicle.

\* \* \*

Q. This bag that you saw, where was it?

A. It was on the floor at the driver's feet.

\* \* \*

Q. Where you were standing[,] not leaning into the car[,] you could see it [the Ziploc bag]?

A. Yes.

*Id.* at 28-31.

Accordingly, the record supports the suppression and trial courts' determinations that Officer McMonagle observed the narcotics packaging

from a lawful vantage point for purposes of the plain view doctrine, and that he was not *in* Whitehead's vehicle. **See Page, supra** (stating that a suppression court's findings of fact, where supported by the record, are binding on a reviewing court); **see also Commonwealth v. Colon**, 777 A.2d 1097, 1103-04 (Pa. Super. 2001) (stating that "[t]here is no reason a police officer should be precluded from observing as an officer what would be entirely visible to him as a private citizen. There is no legitimate expectation of privacy shielding that portion of the interior of an automobile which may be viewed from outside the vehicle by either inquisitive passersby or diligent police officers.") (citation, brackets and ellipses omitted).

To the extent Whitehead emphasizes that Officer McMonagle used the phrase "[a]s I leaned in," N.T., 12/7/12, at 15, Whitehead overlooks the main substance of the Officer's testimony, and seeks to cast it in a light most favorable to the defense, contrary to our standard of review. **See Page, supra**. Officer McMonagle expressly testified that he never leaned into Whitehead's vehicle, and that he could see the narcotics packaging without leaning into the vehicle. Moreover, the mere fact that Officer McMonagle had, at one point, leaned his shoulder *on* the door jamb of Whitehead's *closed* driver's side door does not mean that he viewed the narcotics packaging from an unlawful vantage point. Thus, this claim is without merit.

In his second issue, Whitehead contends that "[e]ven if this Honorable Court were to conclude that [] Officer [McMonagle] was in a lawful vantage

point, his observations do not fulfill the second prong of the plain view doctrine[,] which requires the incriminating nature of [the] item to be immediately apparent." Brief for Appellant at 13. Whitehead points out that although Officer McMonagle testified that he saw what he believed to be narcotics packaging (*i.e.*, the small Ziploc bag) on the floor of Whitehead's vehicle, he conceded that he did not see any narcotics. **Id.** at 14 (citing N.T., 12/7/12, at 33, 51, and **Commonwealth v. Stackfield**, 651 A.2d 558, 562 (Pa. Super. 1994) (holding that the warrantless, protective pat-down search of the defendant's person did not meet the "plain feel" warrant exception, and stating that "[a] zip-lock baggie is not *per se* contraband, although material contained in a zip-lock baggie may well be.")).

Whitehead has waived this claim by his failure to include it in his court-ordered Rule 1925(b) Concise Statement.[4] **See** Pa.R.A.P. 1925(b)(4)(vii) (providing that "[i]ssues not included in the Statement … are waived."); **see also Commonwealth v. Lord**, 719 A.2d 306, 309 (Pa. 1998) (holding that "[a]ny issues not raised in a 1925(b) statement will be

---

[4] The only issue in Whitehead's Concise Statement that relates to suppression/plain view doctrine states as follows: "The [suppression c]ourt improperly denied a [M]otion to suppress a search of [Whitehead's] vehicle[,] as *the police unlawfully gained a vantage point to the vehicle* without reasonable suspicion or probable cause, thus tainting the subsequent search of the vehicle[,] which uncovered narcotics and a firearm[.]" Concise Statement, 9/25/14, ¶ 3 (emphasis added); **see also** Pa.R.A.P. 1925(b)(4)(ii) (providing that "[t]he Statement shall concisely identify each ruling or error that the appellant intends to challenge with sufficient detail to identify all pertinent issues for the judge."). Here, the trial court did not address Whitehead's instant claim in its Rule 1925(a) Opinion.

deemed waived."); ***Commonwealth v. Deck***, 954 A.2d 603, 610 (Pa. Super. 2008) (indicating that there must be strict compliance with Pa.R.A.P. 1925(b)).

Even if this claim was not waived, however, we would conclude that it lacks merit. Though it is true that Officer McMonagle saw only a small Ziploc bag, and such bags can be used for purposes aside from storing narcotics, ***see Stackfield, supra***, Officer McMonagle testified that (1) he had made more than 100 prior narcotics arrests; (2) during "several" of these arrests, he had found narcotics contained in the same packaging that he saw on Whitehead's floor mat; and (3) he "immediate[ly]" thought that the Ziploc bag in question may have contained narcotics. ***See*** N.T., 12/7/12, at 16-17. It was not necessary for Officer McMonagle to be certain that the Ziploc bag contained narcotics to meet the plain view exception; rather, he needed only possess probable cause that it did. ***See Sodomsky, supra***; ***see also Commonwealth v. Thompson***, 985 A.2d 928, 931 (Pa. 2009) (stating that "[t]he question we ask is not whether the officer's belief was correct or more likely true than false. Rather, we require only a probability, and not a *prima facie* showing, of criminal activity.") (citations and quotation marks omitted). Moreover, Officer McMonagle's viewing the Ziploc bag must be viewed under the totality of the circumstances. ***See Sodomsky, supra***; ***Thompson***, 985 A.2d at 931. The traffic stop occurred late at night in an "extremely high[-]crime area," Whitehead was visibly nervous, and he made excessive

movements, which, Officer McMonagle testified, raised his suspicion that Whitehead was concealing contraband.

Based upon the foregoing, we conclude that Whitehead was not entitled to suppression of the contraband found in his vehicle. All of the prongs of the plain view exception were met in this case, and therefore, the warrantless search and seizure of the contraband was proper.[5]

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/17/2015

---

[5] As an addendum, we are persuaded by the Commonwealth's rationale that, even if Officer McMonagle had not seen any narcotics packaging in Whitehead's vehicle, this would not require suppression of the seized contraband, since, under the totality of the circumstances of the traffic stop, Officer McMonagle could have legitimately conducted a protective search of the passenger compartment of Whitehead's vehicle. *See* Brief for the Commonwealth at 22-23 (pointing out that the traffic stop occurred late at night, in a high-gun-crime area, and Officer McMonagle testified that Whitehead was visibly nervous, and engaged in excessive and suspicious hand movements); *id.* at 23 (citing ***Commonwealth v. Murray***, 936 A.2d 76, 80 (Pa. Super. 2007) (where the traffic stop occurred at night in a "high narcotics area," and the officer observed the defendant engage in excessive hand movements inside the car, holding that the officer had sufficient reasonable suspicion that the defendant may have been armed and dangerous to conduct a lawful protective search of the car), and ***Illinois v. Wardlow***, 528 U.S. 119, 124 (2000) (recognizing that nervous, evasive behavior is a pertinent factor in determining whether reasonable suspicion is present)); *see also* N.T., 8/15/14 (post-trial Motion hearing), at 6-7 (wherein the trial court stated that the totality of the circumstances of the encounter would have permitted Officer McMonagle to conduct a protective search of Whitehead's vehicle).