J-S33002-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| COREY BREWER | : | No. 451 WDA 2022 |

Appeal from the Order Entered April 20, 2022
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0007039-2021

BEFORE: BENDER, P.J.E., McCAFFERY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BENDER, P.J.E.: **FILED: December 29, 2023**

The Commonwealth of Pennsylvania appeals from the order entered on April 20, 2022, in the Court of Common Pleas of Allegheny County, which denied the Commonwealth's motion *in limine* seeking permission to introduce at trial evidence of other crimes, wrongs, or acts of Appellee, Corey Brewer, pursuant to Pa.R.E. 404(b)(2).[1] After careful review, we reverse and remand for further proceedings.

_____

[*] Former Justice specially assigned to the Superior Court.

[1] The Commonwealth may appeal an interlocutory order precluding evidence when it provides a certification with its notice of appeal that the order terminates or substantially handicaps the prosecution. ***Commonwealth v. Whitlock***, 69 A.3d 635, 636 n.2 (Pa. Super. 2013) (citing Pa.R.A.P. 311(d)). As the trial court's ruling in this case had the effect of excluding prosecution evidence, and the Commonwealth has certified that the ruling substantially handicaps the prosecution, this appeal is properly before this Court.

Appellee has been charged with three counts of strangulation; two counts each of sexual assault and simple assault; and one count each of aggravated assault, unlawful restraint, and terroristic threats.[2] These charges are based on the following allegations:

> [B]etween May 1, 2021 and July 11, 2021[, Appellee] violently sexually assaulted [B.S. (the "Victim")], with whom he had been having a consensual[,] romantic relationship. [Appellee] is accused of preventing the [V]ictim from leaving his residence, strangling her[,] and threatening her with a knife. [Appellee] is accused of taking the [V]ictim's cell phone to prevent her from communicating with others. He's also accused of threatening her [with a deadly weapon and threatening to] kill her children and [the] father [of her children] if she did not do what [he] wanted.

Trial Court Opinion ("TCO"), 12/2/22, at 4.

On December 16, 2021, the Commonwealth filed a notification of its intention to present Rule 404(b)(2) evidence of other crimes, wrongs, or acts ("motion *in limine*"), pursuant to Rule 404(b)(3).[3] Specifically, the Commonwealth sought to introduce testimony from three of Appellee's former intimate partners, whom he allegedly victimized, in order to establish a common scheme or plan, which the Commonwealth asserts is critical to proving "motive, intent, knowledge, and/or lack of mistake or absence" in the present case. Commonwealth's Brief at 12. Appellee filed a responsive pleading, in which he countered that the Commonwealth intends to introduce

---

[2] 18 Pa.C.S. §§ 2718(a)(1); 3124.1; 2701(a)(1); 2702(a)(4); 2902(a)(1); and 2706(a)(1), respectively.

[3] The Commonwealth's Rule 404(b)(2) evidence is also referred to as "other-acts evidence" and "prior bad acts evidence" throughout this writing.

- 2 -

this evidence merely "as propensity evidence, to overwhelm the finder of fact with allegations that [Appellee] is a domestic abuser so that [the jury is] more likely to find that he committed domestic abuse in this case." Appellee's Brief at 3-4 (internal citation and emphasis omitted).

After a hearing on the motion *in limine* and a subsequent status conference, the trial court denied the Commonwealth's request to present Rule 404(b)(2) evidence. **See** Order, 4/20/22 (single page). The Commonwealth filed a timely notice of appeal and complied with the trial court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. On December 2, 2022, the trial court filed its Rule 1925(a) opinion. Herein, the Commonwealth presents a single issue for our review: "Whether the trial court erred in denying the Commonwealth's motion *in limine* which sought to introduce evidence of other crimes, wrongs, or acts pursuant to Pa.R.E. 404(b)(2)?" Commonwealth's Brief at 5.

In reviewing the denial of the Commonwealth's motion *in limine*, we apply the following standard of review:

> Admissibility of evidence is within the sound discretion of the trial court and will not be disturbed absent an abuse of discretion. **See Commonwealth v. Arrington**, … 86 A.3d 831, 842 ([Pa.] 2014). "An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record." **Commonwealth v. Sitler**, 144 A.3d 156, 163 (Pa. Super. 2016) (*en banc*) (citation omitted).

**Commonwealth v. Lynn**, 192 A.3d 165, 169 (Pa. Super. 2018).

Additionally, we remain mindful of the following well-established principles of law and rules of evidence:

> Relevance is the threshold for admissibility of evidence. ***See Commonwealth v. Cook***, … 952 A.2d 594, 612 ([Pa.] 2008). "Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable or supports a reasonable inference or presumption regarding a material fact." ***Commonwealth v. Drumheller***, … 808 A.2d 893, 904 ([Pa.] 2002) (citation omitted). "All relevant evidence is admissible, except as otherwise provided by law." Pa.R.E. 402.

> One such law that limits the admissibility of relevant evidence is Rule 404. Under Rule 404, evidence of "a crime, wrong, or other act" is inadmissible "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Pa.R.E. 404(b)(1). However, this evidence may be admissible when relevant for another purpose, such as "providing motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Pa.R.E. 404(b)(2).

***Id.***

Moreover, "evidence of other crimes or acts may be admitted if such evidence proves 'a common scheme, plan or design embracing commission of two or more crimes so related to each other that proof of one tends to prove the others.'" ***Commonwealth v. Einhorn***, 911 A.2d 960, 967 (Pa. Super. 2006) (quoting Leonard Packel and Anne Bowen Poulin, PENNSYLVANIA EVIDENCE § 404-9(a) (2d ed. 1999)). "A common scheme may be relevant to establish any element of a crime, where intent may be shown through a pattern of similar acts." ***Id.*** (citations omitted). "Evidence of a prior crime may also be admitted to show a defendant's actions were not the result of a

mistake or accident, where the manner and circumstances of two crimes are remarkably similar." **Commonwealth v. Tyson**, 119 A.3d 353, 359 (Pa. Super. 2015) (citation omitted). **See id.** (citing **Commonwealth v. Boczkowski**, 846 A.2d 75 (Pa. 2004) (holding that evidence of the defendant's murder of his former wife was admissible to show absence of accident in the prosecution for murder of the defendant's second wife, where both victims were found dead in a bathtub or hot tub in highly similar circumstances)).

We emphasize that "[i]n a criminal case, ... evidence [of other crimes, wrongs, or acts] is admissible **only if** the probative value of the evidence outweighs its potential for unfair prejudice." Pa.R.E. 404(b)(2) (emphasis added). "In this context, 'unfair prejudice' means a tendency to suggest decision on an improper basis or to divert the jury's attention away from its duty of weighing the evidence impartially." **Lynn**, 192 A.3d at 170 (citing **Commonwealth v. Dillon**, 925 A.2d 131, 141 (Pa. 2007)). Hence, the applicable rule is that "other-acts evidence is by default inadmissible **unless** a Rule 404(b)(2) category or similar justification applies, **and** the probative value of that evidence outweighs its potential for prejudice." **Id.** at 171 (citation omitted; emphasis in original). "The burden is on the party seeking admission to demonstrate the applicability of the exception to the general rule...." **Id.** (citation omitted).

Here, the Commonwealth seeks to introduce at trial the following evidence regarding Appellee's former intimate partners to establish a common

scheme or plan to exert complete control and domination over his female partners:

(a) Towards the end of 2008, [22-]year-old, white, female[] victim, B.M., entered into an intimate relationship with [Appellee]. After a few weeks into the relationship, [B.M.] indicated [Appellee] would regularly lose his temper, scream at her, and assault her, including strangulation. [B.M.] also would testify that when she declined to have intercourse with [Appellee], that would enrage him[,] and he would forcibly engage in sexual acts with her anyway. [Appellee] threatened [B.M.] with a deadly weapon[] and threatened to kill her immediate family members if she left — even listing … the addresses of [B.M.'s] sister and other relatives. [Appellee] installed locks on the doors that required a key to unlock from the inside to leave — [Appellee] would keep these keys on his person. [Appellee] would routinely block [B.M.'s] car in[] the garage. [Appellee] took [B.M.'s] cell phone and would only allow her to use it to text family and friends while under his supervision. [B.M.] managed to escape [Appellee's] residence once, but was ultimately[] chased, tackled, and carried back into [Appellee's] residence. This abuse continued until March of 2009, when [B.M.] escaped.

(b) In November of 2011, [Appellee] engaged in an intimate relationship with a 38[-]year-old, white, female[] victim[,] A.S. A few weeks into the relationship, [Appellee] began to regularly lose his temper, scream at [A.S.], and assault her (including strangling her). Specifically, if [A.S.] would disagree with [Appellee], he would become angry and assault her. [Appellee] would physically stop [A.S.] from leaving his residence — at one point [Appellee] chased [A.S.] while she tried to escape, tackled her[,] and carried her back into his residence. [Appellee] took [A.S.'s] cell phone to limit her communication. [Appellee] threatened [A.S.] with a deadly weapon. [Appellee] threatened to kill [A.S.'s] children if she did not do what [he] ordered. During one … assault[, A.S.] was forced to go to the hospital after [Appellee] assaulted her[. W]hile at the hospital[, Appellee] would not leave [A.S.] alone, and continually threatened her until she made up a story about how she was injured.

(c) On December 29, 2017, [Appellee] was in an intimate relationship with a 36-year-old, white, female[] victim, A.B. [Appellee] saw photos of [A.B.'s] husband on her computer so

[he] became angry and assaulted her. [Appellee] strangled [A.B.] until she became unconscious. The next day[, A.B.] could not call police because [Appellee] followed her around until she was able to escape on December 30, 2017, by running to a neighbor's house. Leading up to this incident, the local police routinely would be dispatched to [Appellee's] residence for similar instances.

Commonwealth's Brief at 10-11 (citing Motion *in Limine*, 12/16/21, at ¶ 5)

(brackets in original omitted).

The Commonwealth explained in its motion *in limine* that the testimony from Appellee's prior victims would establish a common plan or scheme:

The common scheme or plan is evidenced by [Appellee's] choosing to engage in the same specific assaultive action to exercise his power and control over his victims when a disagreement between the parties occurs. [Appellee] chooses white, female victims, under 40-years-old. [Appellee] strangles each of his victims. [Appellee] beats all of his victims. [Appellee] cuts off the victims' communication to the outside. [Appellee] restricts the victims' movement. [Appellee] monitors all his victims. All these unique signatures, in the specific way he chooses to execute them, all show a common scheme or plan[] to control his intimate partners. Furthermore, [Appellee] continues to execute the same common scheme or plan because he **knows** it worked on prior occasions.
…

The prior bad acts the Commonwealth seeks to introduce in the instant case also go to the motive and intent of [Appellee] — abusing an intimate partner to intimidate and maintain control over her. [Appellee's] prior bad acts … prove [Appellee] **knew** the actions alleged in the instant case would successfully reestablish dominance over the victim — again, going to motive and intent. [Appellee's] prior bad acts also prove [Appellee] could not have mistaken his conduct in the course of his relationship to be anything other than intentionally causing physical and mental injury.

The probative value of evidence of such other crimes, wrongs, or acts outweighs its potential for prejudice. Having the full context of [Appellee's] approach to intimate relationships is extraordinarily probative in domestic violence cases and this case largely comes down to [Appellee's] credibility verses the [V]ictim's

- 7 -

credibility. ***See Commonwealth v. Gordon***, 673 A.2d 866, 870 (Pa. 1996) (reversing the trial court's decision to exclude prior bad acts proving common scheme or plan as overly prejudicial, noting "without doubt, the other crimes evidence would be prejudicial to [the defendant]. That is what it is designed to be. On the facts of this case, however, it is not unduly prejudicial, as it is required for the Commonwealth's case.").

***Id.*** at 12-13 (citing Motion *in Limine* at ¶¶ 7, 10-13) (emphasis in original; some spacing altered; paragraph numbers omitted).

Conversely, Appellee argued that:

The Commonwealth's identified common scheme or plan amounts to little more than a recitation of the crimes for which [Appellee] is charged. [The Commonwealth] accuse[s] him of exercising power and control over him [*sic*] victims through physical violence, including strangulation, threats of violence, as well as restricting their movement and monitoring them. These allegations are not the "unique signatures" which [the Commonwealth] claim[s] them to be, but rather, would be common to any other defendant charged with the same set of crimes.

…

Importantly, in this case, these allegations by [Appellee's] former intimate partners are unproven. [Appellee's] only conviction relating to any of these women was an ***Alford*** plea[4] to a single count of assault relating to [A.S.] A single count of assault does not amount to the long-term kidnapping and abuse alleged for which he is charged in this case, and an ***Alford*** plea does not amount to an admission of guilt. This severely impacts the probative value of these accusations.

Appellee's Brief at 4 (citing Answer to Motion *in Limine*, 1/19/22, at ¶¶ 10, 20) (paragraph numbers omitted).

_____

[4] ***North Carolina v. Alford***, 400 U.S. 25 (1970). "[A] person entering an ***Alford*** plea claims innocence, but consents to the imposition of a prison sentence." ***Commonwealth v. Pasture***, 107 A.3d 21, 23 n.1 (Pa. 2014).

Appellee further suggested:

> Even if the other act evidence "would not be introduced for propensity purposes, it should still be deemed inadmissible for risk of undue prejudice." Stressing the dated and unproven nature of the former girlfriends' accusations, the probative value of their testimony "is substantially outweighed by the risk of undue prejudice because the jury is likely to improperly use the testimony for propensity purposes." He also pointed out that "admission of these accusations will have the effect of cramming three additional min-trials [*sic*] into this one, and would force the parties to litigate years-old accusations."

*Id.* at 5 (citations to record and brackets in original omitted).

As the trial court explained in its Rule 1925(a) opinion, it denied the Commonwealth's motion *in limine* because it agrees with Appellee that the probative value of the evidence is substantially outweighed by the prejudicial nature of the evidence. It opined:

> The [c]ourt's overarching concern about the admission of the [Commonwealth's] proffered evidence is that it … mirrors precisely the conduct charged against [Appellee] in this case and it is emotionally charged evidence. The Commonwealth argues that the evidence should be admissible because it qualified as one of the exceptions to Rule 404(b). In this [c]ourt's view, however, this evidence is severely prejudicial propensity evidence. The real impact this evidence will have is that it virtually implores the jury to convict because [Appellee] allegedly committed virtually identical acts against prior paramours. A jury will most certainly view this evidence as propensity evidence. The jury will certainly determine that [Appellee] acted in conformity with that evidence when evaluating [Appellee's] guilt rather than base its verdict on the direct evidence of the case. One of the incidents occurred approximately 12 years ago. The other incidents are dated as well. Because the conduct of the prior incidents is so graphic and virtually identical to the facts of the instant case, this [c]ourt does not believe that a limiting instruction will cure the substantial prejudice that will occur if this evidence is admitted at trial. Accordingly, in this [c]ourt's view, the probative value of this

evidence is substantially outweighed by the severely prejudicial nature of the evidence.

A second, important[] reason that this evidence should not be admitted is the risk of confusion of issues. The jury will, in effect, be put in a position to deliberate on four different cases, with four alleged different victims, concerning what happened in each episode of each of the four relationships. The risk of confusion of issues is substantial.

TCO at 5-6.

On appeal, the Commonwealth claims that the trial court abused its discretion in denying its motion *in limine*. It notes that the trial court found the other-acts evidence to be relevant and probative here, yet the court excluded the evidence over a concern with prejudice and possible confusion for the jury. Commonwealth's Brief at 23. In doing so, the Commonwealth argues that the trial court failed to appreciate the mitigating effect of a jury instruction, noting that "[t]he law presumes that the jury will follow the instructions of the court. Absent evidence to the contrary, the jury is presumed to have followed the trial court's instructions." *Id.* at 24 (quoting **Commonwealth v. Chiemel**, 30 A.3d 1111, 1184 (Pa. 2011) (citations omitted)). The Commonwealth proffers that the proper instruction could prevent confusion for the jury and the need for the jury to deliberate on four different cases. *Id.*

Additionally, the Commonwealth claims that:

The trial court was overly concerned with how consensual sexual relations at the start of each relationship established a unique situation as to [the] variety of sexual activities that would be tolerated or engaged in with approval, without giving due deference to the similar pattern of strangulation, forced isolation, threats to kill family members, threats with a deadly weapon, and

- 10 -

total control of communication with the world outside of [A]ppellee's residence, which [A]ppellee imposed upon his victims.

*Id.* In support of its argument, the Commonwealth points us to the following excerpt from the notes of testimony of the March 28, 2022 hearing on its motion *in limine*:

THE COURT: … So your side of the case is [Appellee] has the same motive to treat this Victim the way [he] has treated other people?

[COMMONWEALTH]: That's correct, Your Honor.

THE COURT: What is his motive?

[COMMONWEALTH]: Exercise power and control over his intimate partner.

THE COURT: So, in order to do that, you have to proffer evidence that that is something [Appellee] wants to do.

[COMMONWEALTH]: Yes, Judge.

THE COURT: And what is your evidence that he wants to exercise power and control … over female intimate partners…?
…

[COMMONWEALTH]: The conduct in this case.  He does things to isolate his intimate partners.  He does things to impose physical pain, as well as mental constrictions.

THE COURT: Do you have any evidence from prior incidents that he made statements to that effect?  … That he made statements that he wants to control them?

[COMMONWEALTH]: No.

THE COURT: Okay.  Anything else under [Rule] 404(b)?

[COMMONWEALTH]: Common scheme and plan.

THE COURT: Why would you think that he has a common scheme or plan in relation to these other people as opposed to he had prior relationships, he treated people in a certain way in prior relationship [*sic*]?  What is the common plan that they are all

- 11 -

connected? Is there anything that suggests that they are all connected?

[COMMONWEALTH]: Yes, Judge. Again, these are the acts of a domestic abuser. The way he engages in this conduct consistently across all of his relationships is —

THE COURT: But what's the common plan, scheme or design to – let's say, again, victim 1, prior relationship, victim 2, prior relationship, what is the connection between 1 and 2, 2 and 3, 1 and 3? What is it that makes it a common plan, scheme or design?

[COMMONWEALTH]: He knows what he can get from each intimate partner as a submissive as he continues to do this relationship to relationship. That's how they are all linked. One builds on the other, Judge. He is building on past experience to engage in the same conduct again, and then to do it more effectively.

THE COURT: Any other category?

[COMMONWEALTH]: I think to that same end, knowledge comes to mind where he knows this conduct was [*sic*] worked in the past to keep his survivors, victims, former intimate partners quiet or to not cooperate with authorities or to do his every will and whimsy. And the final category, Judge, that I have included in my motion would be an absence of mistake, specifically as it relates to —

THE COURT: Let me just stop you there, and I don't want to get too deep into this. But isn't the sexual conduct between two consenting people and second people unique to that relationship?

[COMMONWEALTH]: I don't understand the question.

THE COURT: You said earlier that there was consensual conduct; did you not?

[COMMONWEALTH]: Yes, over the course of the conduct entirely, yes.

THE COURT: So, again, I don't get too factual about it, but let's just assume the month of June of a given year, the first day of … their physical relationship was totally consensual. A little later, things are still consensual. In between that, events occur that you contend were not consensual. But that one might otherwise look at that conduct and say it could have been consensual since

the first one was and that last one; as opposed to somebody grabs somebody from behind and physically assaults them every single time. There is no consensual issue. Once you get into consensual, isn't it unique to that relationship? What people agree to between them and what they —

[COMMONWEALTH]: I don't think I can agree with that, Your Honor. It's subjective.

THE COURT: It is subjective. That's my point. It's not common plan. These two agree that this high is the limit, and anything other than that is not consensual. These two people say this high is the limit. There might be some commonality at the very top of each of these relationships, but they are very unique in it [*sic*] of themselves; aren't they?

[COMMONWEALTH]: Yes, to a point. So, my point is each — it's subjective insofar that each relationship is unique. I appreciate that. But what is objective is at some point, if somebody tells you no, and you continue to do something anyway, in this case as alleged, anal sex, that is no longer consensual. That is across the board with any relationship.

…

THE COURT: I am having trouble…. I haven't excluded anything you're proffering, but I am … having trouble accepting it at face value to the extent that … because once you concede that there was consensual sexual conduct in relationships, variations on the theme are problematic, in my view. If you put victim 1 — let's say going back in time, again, I am using three. … So, if you go to victim 1 and that person says that he did this and I objected, but he did it anyway, it seems to me the nature of — if there is consensual conduct and how closely does the first case match the given case? How closely does the second case match the given case, as to make it 404(b)? … That's the trouble with this.

[COMMONWEALTH]: I went into specific facts in Paragraph 5 of our brief. A few of them are unique, so I will state them on the record. All victim[s are] white females in intimate relationships with [Appellee].

THE COURT: Let me stop you. What does race have anything to do with it?

[COMMONWEALTH]: I appreciate that, Judge. If it was an independent fact that I am solely relying on, I agree it would be

- 13 -

irrelevant, but in viewing these motions, their totality of the circumstances, and it is an additional fact that makes it consistent across his victimology. That is also something else I have to say after I go through the specifics of each of these cases. But in each case, [Appellee] is limiting their access to people outside of his residence. He is monitoring their communications or is blocking their access to them for people outside of the home. He uses assaults, threats and strangulation throughout each of these. There are some additional specific facts that relate to each of the victims that are unanimous throughout all of them, but are consistent with this case. One, a deadly weapon is threatened, as in this case. On two of these, … the victim's family [is threatened] if they were to leave him or call police, as in this case. In one instance, … the victim had been tackled and carried back into [Appellee's] residence when she ran out. In another case, … the victim ran to the neighbor's house for her to finally call police. And in this case, … the Victim had to leave two separate notes in public places — in the women's bathroom, where [Appellee] did not follow her in before she could finally break free. I think these are quite unique sets of facts.

…

THE COURT: I am having trouble with this…. I think it's dangerously close to propensity. You could say, he is … a person who treats women badly. Every time he gets into a relationship with a woman, he treats her badly. He is disrespectful. He is abusive. He calls her names, whatever. That sounds like propensity, not anything else.

*Id.* at 14-20 (quoting N.T., 3/28/22, at 18-27, 30-31) (cleaned up).

In its appellate brief, the Commonwealth clarifies:

The pattern sought to be established is not so much one of sexual attack or proclivity for certain deviant sexual conduct as it is complete control and domination of a female partner and daily infliction of physical and psychological abuse in order to reduce her to an abject object stripped of any courage to protest or disclose the indignities and violence inflicted by [A]ppellee.

*Id.* at 24.

- 14 -

Moreover, the Commonwealth argues that because the uncorroborated testimony of the Victim in the present case might reasonably lead the jury to determine that there was a reasonable doubt as to whether Appellee committed the crimes charged, the other-acts evidence is necessary for the prosecution of this case and, thus, the trial court abused its discretion in denying the Commonwealth's motion. *Id.* at 28 (citing **Gordon**, 673 A.2d at 869-70 (Pa. 1996) (determining that the trial court abused its discretion in denying the Commonwealth's motion for admission of other-crimes evidence where such evidence was relevant to prove motive, intent, absence of mistake or accident, and a common scheme or plan, and such evidence would not be unduly prejudicial to the defendant)). We agree with the Commonwealth.

As we stated in **Commonwealth v. Cosby**, 224 A.3d 372 (Pa. Super. 2019), *reversed on other grounds*, **Commonwealth v. Cosby**, 252 A.3d 1092 (Pa. 2021):

> A determination of admissibility under the common plan/scheme/design exception
>
> > must be made on a case[-]by[-]case basis in accordance with the unique facts and circumstances of each case. However, we recognize that in each case, the trial court is bound to follow the same controlling, albeit general, principles of law. **When ruling upon the admissibility of evidence under the common plan exception, the trial court must first examine the details and surrounding circumstances of each criminal incident to assure that the evidence reveals criminal conduct which is distinctive and so nearly identical as to become the signature of the same perpetrator. Relevant to such a finding will be the habits or patterns of action or conduct undertaken by the perpetrator to commit crime, as well as the time, place, and types of victims**

> **typically chosen by the perpetrator.** Given this initial determination, the court is bound to engage in a careful balancing test to assure that the common plan evidence is not too remote in time to be probative. If the evidence reveals that the details of each criminal incident are nearly identical, the fact that the incidents are separated by a lapse of time will not likely prevent the offer of the evidence unless the time lapse is excessive.

*Id.* at 398 (quoting **Commonwealth v. Frank**, 577 A.2d 609, 614 (Pa. Super. 1990) (emphasis added).

> Of course, we further recognize
>
> the courts must make sure that evidence of such circumstances have some relevance to the case and are not offered solely to inflame the jury or arouse prejudice against the defendant. The court is **not**, however, required to sanitize the trial to eliminate all unpleasant facts from the jury's consideration where those facts are relevant to the issues at hand and form part of the history and natural development of the events and offenses for which the defendant is charged….

**Commonwealth v. Bidwell**, 195 A.3d 610, 617 (Pa. Super. 2018) (quoting

**Commonwealth v. Lark**, 543 A.2d 491, 501 (Pa. 1988) (emphasis added)).

In the case *sub judice*, the record reveals the following similarities between the underlying charged crimes in the present matter and the prior bad acts proffered by the Commonwealth. In each case, Appellee was involved in an intimate relationship with the victim. All the victims were white females, under the age of forty. In each instance, Appellee became angry with the victims at some point, and then began physically and/or sexually assaulting them. Appellee strangled each of his victims. He cut off their communication to the outside world, restricted their movement, and closely monitored them. In all but one case, Appellee threatened the victim with a

deadly weapon and threatened to kill her family if she did not do what he wanted.

In determining the admissibility of the evidence regarding Appellee's prior relationships, we are guided by our Supreme Court's decision in *Arrington*, *supra*, in which the Commonwealth similarly sought to introduce evidence of prior bad acts committed by the defendant against three other girlfriends "for the … purpose of proving a common scheme to control girlfriends through violence and intimidation." *Arrington*, 86 A.3d at 842. The testimony concerning Arrington's treatment of other girlfriends

> [d]emonstrated repeated efforts to preserve intimate relationships through harassment, intimidation, and physical violence culminating in the use of a deadly weapon. In each instance, [Arrington]: (1) monitored his girlfriend's daily activities; (2) resorted to violence when his partner wanted to end a relationship or interacted with other men; (3) inflicted head or neck injuries with his fist, a handgun, or an edged weapon; and (4) harmed or threatened to harm members of his girlfriend's family or male acquaintances that he viewed as romantic rivals.

*Id.* (footnote omitted).

In *Arrington*, the trial court allowed the admission of the Commonwealth's Rule 404(b)(2) evidence and — after being convicted, *inter alia*, of first-degree murder and sentenced to death — Arrington appealed, arguing that the trial court abused its discretion in admitting evidence of his other crimes. *Id.* at 840-41. *See also id.* at 842 (Arrington's claiming that "[t]hese matters were completely irrelevant and served only to inflame the passions of the jury"). On direct appeal, the Court determined that "the aforementioned evidence was not introduced in an attempt to portray

[Arrington] as a habitual criminal with a propensity for violent behavior[,]" but rather, "to establish that [he] acted pursuant to a common plan or scheme." *Id.* at 844. "Given the shared characteristics of each relationship," the Court concluded that the evidence fell within the purview of Rule 404(b)(2), and that Arrington's claim failed. *Id.* at 844-45.

We are further guided by ***Commonwealth v. Hicks***, 156 A.3d 1114 (Pa. 2017), in which our Supreme Court acknowledged that it "has long recognized an exception to the general inadmissibility of other crimes evidence where there is a striking similarity — or logical connection — between the proffered prior bad acts and the underlying charged crimes." *Id.* at 1125. In explaining the logical connection standard, the Court noted, "much more is demanded than the mere repeated commission of crimes of the same class, such as repeated burglaries or thefts. The device used must be so unusual or distinctive as to be like a signature." *Id.* at 1125-26 (citation omitted). The ***Hicks*** Court determined that evidence regarding the appellant's prior relationships with, and assaults upon, other women was "strikingly similar" to the circumstances surrounding his relationship with the victim, her injuries, and her subsequent death, such that there was a logical connection between them for the purpose of a common plan or scheme where:

> In each case [the] appellant: (1) was introduced to drug-dependent women of similar body types for purposes of using drugs; (2) showed a sexual interest in the women, sometimes involving prostitution; (3) resorted to violence when the women behaved in a way he found disagreeable; (4) inflicted injuries on each woman by targeting her neck area with his hands, a sharp[-

]edged object, or both; and (5) verbally threatened to kill each woman.

*Id.* at 1127 (footnote omitted). It explained that these similarities "are not mere insignificant details of crimes of the same class, where there is nothing distinctive to separate them from, for example, common street crimes." *Id.* at 1128. *See also id.* (noting that these similarities constitute "a 'virtual signature' for purposes of proving common scheme, intent and identity").

Having concluded that a logical connection existed between the other crimes and the underlying charged crime, the *Hicks* Court stated that it must next determine whether the probative value of the evidence outweighed any unfair prejudice. *Id.* (citations omitted). "Obviously, the impact of introducing evidence of other crimes is significant and may be highly prejudicial. However, such evidence is also highly probative when the Commonwealth's case is otherwise based largely on circumstantial evidence." *Id.* (internal citations omitted). The *Hicks* Court deemed the evidence regarding the appellant's assaults on other women to be "relevant and probative to show lack of accident, and that [the] appellant acted intentionally in all instances with a common scheme: violently attacking a woman with whom he engaged in drug use and sex, in the neck, after a disagreement." *Id.* at 1129. Moreover, it stated, "the trial court's detailed instructions properly informed the jury of the limited and narrow purpose for which the evidence was admitted and thus restricted any unfair prejudicial effect." *Id.* (citing *Arrington*, 86 A.3d at 845 (comprehensive limiting instructions to be considered when balancing probative value and prejudicial impact);

*Boczkowski*, 846 A.2d at 89 (limiting instructions weigh in favor of upholding admission of other bad acts evidence)). Accordingly, the **Hicks** Court concluded that the trial court did not abuse its discretion in admitting Rule 404(b)(2) evidence regarding other crimes, wrongs or acts by the appellant. ***Id.***

Applying the foregoing case law to the instant matter and taking into consideration Appellee's habits and patterns of behavior, as well as the characteristics of his chosen victims, we believe that the similar, relevant details surrounding each incident demonstrate criminal conduct on the part of Appellee that is sufficiently distinctive so as to establish that he engaged in a common plan or scheme. ***See Hicks***, ***supra***; ***Arrington***, ***supra***; ***Cosby***, ***supra***. ***See also Tyson***, 119 A.3d at 360 n.3 ("The common scheme exception does not require that the … scenarios be identical in every respect."); ***Cosby***, 224 A.3d at 402 ("It is the pattern itself, and not the mere presence of some inconsistencies between the various assaults, that determines admissibility under [the Rule 404(b)(2)] exceptions."). The evidence demonstrates that Appellee acted with a common scheme to control and dominate his female, intimate partners through fear and intimidation, isolating them from communication with family and friends, restricting their movements, and inflicting violence — including strangulation.

As such, we reject Appellee's argument that the allegations made by his prior victims "would be common to any other defendant charged with the same set of crimes." Appellee's Brief at 4. ***See Tyson***, 119 A.3d at 360

(concluding that evidence of the appellee's sexually assaulting two different women was not "generically common to many sexual assault cases" but, rather reflected "a clear pattern where [the a]ppellee was legitimately in each victim's home; [the a]ppellee was cognizant of each victim's compromised state; and [the a]ppellee had vaginal intercourse with each victim in her bedroom in the middle of the night while the victim was unconscious"); *but see Bidwell*, 195 A.3d at 618, 626-27 (affirming the trial court's denial of the Commonwealth's motion *in limine* seeking to introduce evidence of the defendant's prior violent behavior toward other women on the grounds that "it was improper propensity evidence of [the defendant's] prior, **dissimilar** assaults on other women[,]" where the other women's testimony did not "evidence any particular distinctive pattern of behavior by [the defendant])" (emphasis added).[5]

_____

[5] The defendant/appellee in **Bidwell** was charged with criminal homicide of a woman with whom he had been involved in a sexual relationship for approximately one year prior to her death. In upholding the trial court's exclusion of evidence of Bidwell's prior bad acts toward four other women, the **Bidwell** Court reasoned that:

> The Commonwealth's evidence failed to show that each woman was assaulted in the same manner or had been involved in a sexual relationship with [Bidwell,] or that [Bidwell] was under the influence of alcohol or drugs at the time of [each of] the encounters with the women. To the contrary, the women's testimony establishes, at most, the commission of crimes or conduct in the past "of the same general class," namely physical and/or sexual assaults. Their testimony does not evidence any particular distinctive pattern of behavior by [Bidwell] in that [Bidwell's] allegedly abusive behavior appears to have been

*(Footnote Continued Next Page)*

We further deem Appellee's emphasis on the fact that the allegations of his former intimate partners are "unproven" to be of no moment here. *See* Appellee's Brief at 4 (stating that this "severely impacts the probative value of these accusations"). "Rule 404(b) is not limited to evidence of crimes that have been proven beyond a reasonable doubt in court. It encompasses both prior **crimes** and prior **wrongs and acts**, the latter of which, by their nature, often lack 'definitive proof.'" ***Commonwealth v. Lockcuff***, 813 A.2d 857,

---

> triggered in each incident by different causes. For instance, it is alleged that [Bidwell] assaulted his [two ex-]wives during the course of their marriages, but he spontaneously attacked [another woman] whom he had just met while she interviewed for a job. [A fourth woman] indicated [Bidwell] did not physically accost her.
>
> …
>
> As the trial court found herein, the proposed testimony of [the four other women] does not establish a pattern of conduct on the part of [Bidwell] so distinctive that proof of one tends to prove the others. Instead, the prior bad acts testimony demonstrates that [Bidwell] was a domestic abuser of women, some of whom he was involved in ongoing romantic relationships in the past, but it does not show a unique "signature" *modus operandi* relevant to the [v]ictim's murder.

***Bidwell***, 195 A.3d at 626-27. Unlike ***Bidwell***, the Commonwealth's evidence in the instant matter establishes a distinctive pattern of behavior by Appellee, in that after beginning a consensual intimate relationship with each of the women, he became angry with them and began assaulting them; he strangled each of them; he restricted their movement and cut off their communication with friends and family; and in all but one case, he threatened to kill the woman's family. *See Cosby*, 224 A.3d at 404 (concluding that prior bad acts evidence "established a distinct, signature pattern[ where the a]ppellant presented himself as a mentor or potential mentor to much younger women in order to establish trust, and then he abused that trust by drugging those women in order to sexually assault them"); *Id.* ("This constitutes far more distinctive behavior than the [prior bad acts] evidence of prior domestic abuse considered by the ***Bidwell*** Court.").

861 (Pa. Super. 2002) (emphasis in original). Essentially, Appellee's argument goes to the weight accorded to the evidence — not to its admissibility — a decision which is clearly left to the fact-finder. *See id.* (noting that the appellee would be free to cross-examine the other-acts witness on the facts surrounding her allegations and her memory of the incident).

Additionally, we do not deem the other-acts evidence so remote in time as to negate its probative value. The Commonwealth seeks to introduce evidence from incidents that occurred in 2008, 2011, and 2017, and in the present matter, 2021. Thus, although the total time span is fourteen years, the time in between each incident is not more than six years. This Court has held evidence admissible under the common scheme exception in the context of even longer time lapses. *See Commonwealth v. Aikens*, 990 A.2d 1181, 1185 (Pa. Super. 2010) (determining that a ten-year lapse was not excessive); *Commonwealth v. Luktisch*, 680 A.2d 877 (Pa. Super. 1996) (declaring that a six-year time lapse was not excessive). Moreover, the similarities of the prior bad acts with the instant matter render the time gap between incidents even less important.[6] *See Tyson*, 119 A.3d at 359

---

[6] The trial court acknowledges that the alleged conduct of Appellee in the prior incidents is "virtually identical" to that alleged in the present case. *See* TCO at 5 (noting "the conduct of the prior incidents is so graphic and virtually identical to the facts of the instant case"). *See also id.* (stating that the evidence proffered by the Commonwealth regarding the prior victims "mirrors precisely the conduct charged against [Appellee] in this case").

("Although remoteness in time is a factor to be considered in determining the probative value of other crimes evidence under the theory of common scheme, plan or design, the importance of the time period is inversely proportional to the similarity of the crimes in question.") (citations and internal quotation marks omitted).  *See also id.* at 361 (recognizing that the time gap between incidents is only one factor in the common scheme analysis, but not the dispositive factor).

Finally, while we recognize that the other-acts evidence would be prejudicial to Appellee, on the facts of this case, we do not believe it would be *unduly* prejudicial, as it is vital to the Commonwealth's case.  *See Gordon*, 673 A.2d at 870 (concluding that the other crimes evidence would not be unduly prejudicial where such evidence was required for the Commonwealth's case).  *See also id.* ("[S]ince the uncorroborated testimony of the alleged victim in this case might reasonably lead a jury to determine that there was a reasonable doubt as to whether Gordon committed the crime charged, it is fair to conclude that the other crimes evidence is necessary for the prosecution of the case."); Commonwealth's Brief at 28 (stating that its case is largely based on the uncorroborated testimony of the Victim).  We agree with the Commonwealth that the prejudicial effect of allowing the Rule 404(b)(2) evidence can be mitigated by the trial court's issuing cautionary instructions to the jury.  *See Hicks*, 156 A.3d at 1129 (declaring that the prejudicial effect of the Commonwealth's Rule 404(b) evidence was properly limited by the trial court's cautionary instructions to the jury); *Boczkowski*, 846 A.2d at 89

(recognizing that limiting instructions weigh in favor of upholding admission of other bad acts evidence); **Commonwealth v. LaCava**, 666 A.2d 221, 228 (Pa. 1995) (presuming that jurors will follow the court's instructions).

Based on the foregoing, we conclude that the Commonwealth has met its burden of establishing that the testimony of Appellee's former, intimate partners is relevant to proving a common scheme or plan and that the probative value of this evidence outweighs any potential for prejudice. Accordingly, we reverse the trial court's April 20, 2022 order denying the Commonwealth's motion *in limine* and remand for further proceedings.

Order reversed.  Case remanded.  Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

12/29/2023